UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:19-cv-00480-RJC

| MELINDA CAROL EDWARDS, | ) |  |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | ORDER |
| ANDREW M. SAUL, Commissioner of Social Security, | ) | |
| Defendant. | ) | |

**THIS MATTER** comes before the Court on Plaintiff's Motion for Summary Judgment, (Doc. No. 12), and Defendant's Motion for Summary Judgement, (Doc. No. 14).

I. BACKGROUND

A. Procedural Background

Melinda Carol Edwards ("Plaintiff") seeks judicial review of Andrew M. Saul's ("Defendant" or "Commissioner") denial of her social security claim. Plaintiff filed an application for Disability Insurance under Title II of the Social Security Act ("SSA") on January 27, 2016. (Doc. Nos. 10 to 10-1: Administrative Record ("Tr.") at 209.) Her application was denied first on April 5, 2016, (Tr. 129), and upon reconsideration on June 30, 2016, (Tr. 139). Plaintiff timely filed a request for a hearing on August 25, 2016, (Tr. 148), and an administrative hearing was held by an administrative law judge ("ALJ") on May 10, 2018, (Tr. 168). Following this hearing, the ALJ found that Plaintiff was not disabled under the SSA. (Tr. 12–29.) Plaintiff requested a review

of the ALJ's decision, but on July 27, 2019, the Appeals Council denied Plaintiff's request for review. (Tr. 1–3.) Having exhausted her administrative remedies, Plaintiff now seeks judicial review of Defendant's denial of her social security claim in this Court.

B. Factual Background

The question before the ALJ was whether Plaintiff was disabled under sections 216(i) and 223(d) of the SSA. (Tr. 15.) To establish entitlement to benefits, Plaintiff has the burden of proving that she was disabled within the meaning of the SSA.[1] Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). Plaintiff alleges that her disability began on March 5, 2015 due to physical and mental impairments. (Tr. 233.)

After reviewing Plaintiff's record and conducting a hearing, the ALJ found that Plaintiff did not suffer from a disability as defined in the SSA. (Tr. 29.) In reaching his conclusion, the ALJ used the five-step sequential evaluation process established by the Social Security Administration for determining if a person is disabled. The Fourth Circuit has described the five steps as follows:

> [The ALJ] asks whether the claimant: (1) worked during the purported period of disability; (2) has an impairment that is appropriately severe and meets the duration requirement; (3) has an impairment that meets or equals the requirements of a listed impairment and meets the duration requirement; (4) can return to her past relevant work; and (5) if not, can perform any other work in the national economy.

---

[1] Under the SSA, "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

Radford v. Colvin, 734 F.3d 288, 290–91 (4th Cir. 2013) (paraphrasing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The claimant has the burden of production and proof in the first four steps. Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015). However, at the fifth step, the Commissioner must prove that the claimant is able to perform other work in the national economy despite his limitations. See id.; see also 20 C.F.R. § 416.960(c)(2) (explaining that the Commissioner has the burden to prove at the fifth step "that other work exists in significant numbers in the national economy that [the claimant] can do").

In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. 28–29.) In reaching his decision, the ALJ first concluded at steps one through three that Plaintiff was not employed, that she suffered from severe physical and mental impairments,[2] and that her impairments did not meet or equal any of the impairments listed in the Administration's regulations. (Tr. 17–20.) Therefore, the ALJ examined the evidence of Plaintiff's impairments and made a finding as to Plaintiff's Residual Functional Capacity ("RFC"). In pertinent part, the ALJ found that Plaintiff

> had the [RFC] to perform light work . . . except she is limited to occasional climbing of ramps and stairs; no climbing or [sic] ropes, ladders, or scaffolds; occasional balancing, stooping, kneeling, and crouching; no crawling; frequent reaching overhead with the left upper extremity (non-dominant); frequent handling and fingering bilaterally; should avoid concentrated exposure to vibration and hazards; and is

---

[2] The ALJ determined that Plaintiff suffered from the following severe impairments: obesity, hypertension, left shoulder degenerative joint disease, inflammatory arthritis, degenerative disc disease and lordosis of the lumbar spine, major depressive disorder, history of polysubstance and impulse control disorder, and depression. (Tr. 17.)

3

> limited to simple, routine, and repetitive tasks that can be completed in two-hour segments; work at a non-production pace in a stable work setting; occasional interaction with supervisors and co-workers; superficial interaction with the public; and work that involves no conflict resolution.

(Tr. 20.) Having established Plaintiff's RFC, the ALJ concluded that Plaintiff could not perform the work in which she had previously been employed. (Tr. 28.) The ALJ thus proceeded to the fifth and final step of the process: determining whether, given the limitations embodied in Plaintiff's RFC, Plaintiff could perform any work that existed in significant numbers in the national economy. (Tr. 28–29.) To make that determination, the ALJ relied on the testimony of a Vocational Expert ("VE"). The VE testified that Plaintiff could perform three jobs that existed in significant numbers in the national economy: "laundry folder,"[3] "inspector/packer,"[4] and "shipping/receiving weigher."[5] (Tr. 29.) According to the Dictionary of Occupational Titles, all of these jobs involve "light work." The ALJ accepted the VE's testimony and concluded that Plaintiff's impairments did not prevent her from working; consequently, Plaintiff's application for Title II benefits was denied. (Tr. 28–29.)

## II. STANDARD OF REVIEW

The Court must decide whether substantial evidence supports the final decision of the Commissioner and whether the Commissioner fulfilled his lawful duty in his determination that Plaintiff was not disabled under the Social Security Act. See 42 U.S.C. §§ 405(g), 1382(c).

---

[3] DOT 369.687-018.
[4] DOT 559.687-074.
[5] DOT 222.387-074.

The SSA, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The district court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). As the SSA provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, the Fourth Circuit noted that "substantial evidence" has been defined as being "more than a scintilla and [do]ing more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401); see also Seacrist v. Weinberger, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence . . . .").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again or substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays, 907 F.2d at 1456; see also Smith, 795 F.2d at 345; Blalock, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome—so long

5

Case 3:19-cv-00480-RJC   Document 17   Filed 08/06/20   Page 5 of 10

as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION

Plaintiff contends that remand is warranted for two reasons: (1) the ALJ gave significant weight to the opinion of the state agency psychologist Darolyn Hilts, PhD, but did not include in his RFC assessment all the limitations embodied in Hilts' opinion or explain why those limitations were not included; and (2) the ALJ did not sufficiently explain why he gave little weight to the opinion of Plaintiff's treating physician, Dr. Steven Bonner. The Court disagrees with Plaintiff's allegations of error and addresses each in turn.

### A. The ALJ did not commit reversible error by failing to expressly include in his RFC assessment all limitations embodied in Hilts' opinion.

In determining Plaintiff's RFC, the ALJ gave significant weight to the opinion of the state agency psychological consultant Darolyn Hilts, PhD. (Tr. 27.) With respect to Plaintiff's social interaction limitations, Hilts opined that Plaintiff was moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisors. (Tr. 119.) Hilts stated that Plaintiff "can accept non-confrontational direction from a supervisor and maintain adequate relationships with co-workers in a work setting with minimal social interaction requirements and only casual public contact." (Tr. 119.) Plaintiff argues that remand is necessary because the ALJ gave significant weight to Hilts' opinion but failed to include in his RFC assessment a limitation to accepting only non-confrontational direction from a supervisor or explain why he did not include such a limitation.

6

That the ALJ did not include in his RFC assessment an express limitation to account for each statement made in Hilts' opinion does not warrant remand. In his RFC assessment, the ALJ included limitations to account for Plaintiff's social interaction limitations as opined by Hilts. Specifically, the ALJ limited Plaintiff to (1) "a stable work setting"; (2) "occasional interaction with supervisors and co-workers"; (3) "superficial interaction with the public"; and (4) "work that involves no conflict resolution." (Tr. 20.) Although the ALJ did not include a specific limitation to only non-confrontational direction from a supervisor, his RFC assessment is not inconsistent with such a limitation, and the above-stated limitations account for Plaintiff's moderate limitation in the ability to accept instructions and respond appropriately to criticism from supervisors, as Hilts opined. Therefore, the Court concludes that the ALJ did not commit reversible error by failing to include an express limitation to accepting only non-confrontational direction from a supervisor.

### B. The ALJ sufficiently explained why he gave little weight to the opinion of Plaintiff's treating physician.

Plaintiff argues that the ALJ failed to sufficiently explain why he gave little weight to the opinion of Plaintiff's treating physician, Dr. Steven Bonner.

The regulations provide that more weight is generally to be given to medical opinions from the claimant's treating sources. 20 C.F.R. § 404.1527(c)(2). This is because treating sources "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations." Brown

7

v. Comm'r Social Sec. Admin., 873 F.3d 251, 268 (4th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)). "Although the treating physician rule generally requires a court to accord greater weight to the testimony of a treating physician, the rule does not require that the testimony be given controlling weight." Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). "Under the regulation's treating physician rule, controlling weight is to be accorded to 'a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s)' if that opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record.'" Brown, 873 F.3d at 256 (quoting 20 C.F.R. § 404.1527(c)(2)). "Thus, by negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Mastro, 270 F.3d at 178 (quotation marks omitted). The ALJ must "give good reasons" for the weight given to a treating source's opinion. 20 C.F.R. § 404.1527(c)(2).

Bonner opined that Plaintiff would need four breaks per day of fifteen to twenty minutes and would be absent five days per month. (Tr. 1061.) Bonner further opined that Plaintiff could stand and walk for two hours per day and sit for four hours per day. (Tr. 1062.) In stating that he gave Bonner's opinion little weight, the ALJ explained:

> Initially, as a family practitioner, [Bonner] is not a specialist in regard to [Plaintiff's] orthopedic problems. Additionally, the extent of limitations as outlined therein is not supported by his own treatment records. The treatment notes support some physical and mental limitations, though she was often described as "within normal limits" on examination, but they do not include objective findings to support the

8

Case 3:19-cv-00480-RJC Document 17 Filed 08/06/20 Page 8 of 10

> opinion that she requires additional rest breaks, will be absent five times per month, and can stand and walk for only one [sic] hour per day and sit for four hours per day. Additionally, there is no indication that this provider has prescribed a cane to the claimant, though [he] opines that the claimant needs one occasionally. Dr. Bonner's opinions are also not supported by the claimant's reported activities of daily living, including her trip to Japan for six months wherein she required no regular treatment.

(Tr. 26.)

The ALJ gave good reasons for assigning little weight to Bonner's opinion. The ALJ first noted that Bonner is a family practitioner and not a specialist in Plaintiff's orthopedic problems, and under the regulations, the specialization of the physician is an express factor that the ALJ is to consider in determining the weight afforded to a treating source's opinion. 20 C.F.R. § 404.1527(c)(5). The ALJ also explained that Bonner's opinion was not consistent with Bonner's treatment records, and "[i]nternal inconsistencies in a treating source's opinion are a valid reason for rejecting the opinion." Kozel v. Astrue, No. JKS-10-2180, 2012 U.S. Dist. LEXIS 99620, at *25 (D. Md. July 17, 2012). The ALJ also noted that Bonner's opinion was inconsistent with Plaintiff's activities of daily living, which included taking care of her daughter and two grandchildren, occasionally driving short distances, preparing food, doing laundry, watching television, and traveling long distances. (Tr. 25–26.)

Therefore, the Court concludes that the ALJ did not commit reversible error in evaluating and weighing Bonner's opinion and gave good reasons for his decision as to the weight he gave such opinion.

9

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that:

1. Plaintiff's Motion for Summary Judgment, (Doc. No. 12), is **DENIED**;

2. Defendant's Motion for Summary Judgment, (Doc. No. 14), is **GRANTED**;

3. Plaintiff's motion for extension of time, (Doc. No. 11), is **DENIED as moot**; and

4. The Clerk of Court is directed to close this case.

Signed: August 6, 2020

Robert J. Conrad, Jr.
United States District Judge